Marchesseau *v.* The Merchants' Insurance Company of New Orleans.

---

ANDRÉ MARCHESSEAU *v.* THE MERCHANTS INSURANCE COMPANY OF NEW ORLEANS.

The contract of insurance is, essentially, one of indemnity; and this indemnity must be adjusted on the principle of replacing the insured, as near as may be, in the situation he was in at the commencement of the risk. The amount of insurable interest is the market value of the articles at the time and place of the commencement of the risk; and where they have been purchased near that time and place, the cost to the assured is the most satisfactory, though not the only criterion of their value.

Under a policy of insurance, which provided that if there should be any false swearing on the part of the assured, he should forfeit all claim to the policy, a failure by the latter to sustain his affidavit, by direct evidence, to the amount claimed, will not be considered as proof of his having sworn falsely, and thereby forfeit the insurance. In open policies, it is often extremely difficult to prove the actual value of the goods lost; it suffices to show by testimony the great probability of the truth of the affidavit; and in weighing this testimony, the character of the assured, as well as the credibility of the witnesses, must be considered.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

GARLAND, J.   This suit is brought to recover $15,549, on an open policy of insurance against fire, on certain merchandize in a shop in New Orleans, which was consumed on the night between the 29th and 30th of September, 1838.  The defendants say, they are not responsible, because the plaintiff has not sustained a loss to the amount claimed.  They allege that proper preliminary proof had not been furnished, and that no inventory was ever presented

or deposited with them. They further say, that after diligent inquiry, they are unwillingly induced to believe, and so aver, that the conflagration occurred with the knowledge of the plaintiff: that he participated in it through his agents; and that if any loss has occurred, they are not responsible under the terms and qualifications of the policy, as to good faith on the part of the assured.

The evidence shows that the plaintiff arrived in New Orleans, in December, 1837, or in the commencement of the year 1838, with a stock of goods from France; that he opened a shop, and did business as a merchant until sometime early in July following, but to what extent is not clearly shown. On the 2d of July, the defendants signed the policy, and it appears very certain that the plaintiff had about that time made an inventory of the goods, which, he says, he had on hand, and that when he went to effect the insurance, he took it with him; but a secretary or clerk in the office says, that he refused to take it, although offered to him, or even to look at it. This witness says, that the plaintiff took it away, and that he has never seen it since. He did not even look at it for the purpose of filling up the policy, as it was not customary to receive inventories, the plaintiff having told him the amount. The plaintiff departed for France a few days after effecting the insurance, and the house in which the goods were stored was destroyed by fire nearly three months afterwards, he being absent.

The clerk of the plaintiff says, that he assisted in making the inventory. He called out the numbers and prices of the goods, and the plaintiff wrote them down; they were then packed in boxes, baskets, or bales, and carried by another person to the third floor or garret of the building. There were three or four hundred packages. There is abundant testimony, that there were a great many packages, and no doubt that they were full of something. It is proved that the key of the store was left in the possession of the owner of the house, but that it was occasionally given to François Marchesseau, a brother of the plaintiff, who was acting as his agent, although he had no special authorization, and visited the shop occasionally. The evidence on the part of the plaintiff is perhaps sufficiently certain to sustain the verdict, except in two important particulars, to wit, that none of the witnesses swear to the

value of the goods, and that there is no explanation of the great difference existing between the value, as it appears from the invoices filed in the custom house, on which the plaintiff made his entries and paid duties, and the large amount at which the same goods are valued in the inventory. Pascal, who assisted as clerk in making the inventory, does not swear that the goods were put down at their true market value, nor that there was the quantity stated. He says that 'he called the numbers and prices,' and that the plaintiff wrote them down; but he no where says, that they were correctly written down, as to quantity and value. Other witnesses fully corroborate Pascal in his statement as to the marking of the inventory, but none fix any particular value on the goods. It is shown that the plaintiff brought all the goods from France; they must then have passed legally through the custom house. From it, the defendants have procured copies of the invoices on file, and they do not amount to much more than one-third of the sum claimed. They were sworn to by the plaintiff, and the defendants insist that he shall abide by them, adding thereto a fair allowance for risk and charges, and then deducting the probable amount of the sales made in the course of six months of business.

The jury found a verdict for $8000, on which judgment was rendered in favor of the plaintiff; and the defendants, after an ineffectual attempt to obtain a new trial, appealed. They ask us for an entire reversal of the judgment, and the plaintiff asks that it be amended, so as to give him the whole amount claimed.

In this court the defendants have waived the question as to the preliminary proof, and have met the plaintiff by an accusation of attempting to defraud them by false swearing, and by an overvaluation of the goods, by which they say the policy is forfeited according to its ninth condition, which is as follows:

'All persons assured by this Company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the Company; and, as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation, and also, if required, by their books of account, and other proper vouchers; they shall also declare on oath, whether any and what other insurance has been made

Marchesseau *v.* The Merchants' Insurance Company of New Orleans.

on the same property; and until such proofs and declarations are produced, the loss shall not be payable. Also, if there appear any fraud, or false swearing, the claimant shall forfeit all claim by virtue of this policy.'

Upon a thorough examination of the evidence, we are not satisfied with the verdict of the jury, nor are we convinced that the defendants' accusation of fraud and perjury is sustained. It is evident that the jury did not think, that a loss to the amount claimed had been sustained, but that they thought that there had been some loss, and allowed $8000 to cover it. In questions of this kind, we are disposed to pay much respect to the opinions of a jury, but in this case we are unable to see from the testimony, how they could arrive at the result, to which they came. The definite or approximate value of the goods is not proved by a single witness, though it is certain that he had a considerable stock on hand; and the great disparity between the invoices and the inventory is unexplained. On the other hand, the conduct of the defendants is not altogether free from suspicion and reproach. When the insurance was effected, an inventory and valuation was offered, by which they might have seen what they were insuring, and from an examination of it have found whether the goods were estimated too highly. To get the premium seemed then the principal object; and after the loss occurred, the evidence shows that they were disposed to stand upon the most rigid rules both of etiquette and law. The evidence is calculated to produce the impression, that documents or papers in relation to the loss, and preliminary proofs were unwillingly received, and that when left against their wishes, that they were lost, destroyed, or suppressed. They probably acted under a suspicion of some unfair proceedings on the part of the plaintiff or his brother, but we cannot see any evidence to justify a charge that the plaintiff was in any manner the cause of the fire and consequent loss of the property, however guilty others may have been. He had been absent from the state nearly three months in Europe, the key of the house was in the possession of the owner, and no one is shown to have been in the shop for some ten or eleven hours previous to the fire.

The contract of insurance is one essentially of indemnity; and good faith, on both sides, should be its basis. It is not its object to

put the assured in the same situation, in case of loss, in which he
would have been, had the adventure, on which it was effected, ter-
minated successfully.   He must, particularly in open policies, take
some of the chances of his speculation, and of the state of the mar-
kets.   The indemnity must therefore refer to the beginning of the
risk, and the losses are to be adjusted on the principle of replacing
the party assured, as nearly as may be, in the situation he was in at
that time.   The amount of insurable interest is the market value of
the goods at the time and place of the commencement of the risk,
and the best, though not conclusive criterion of this interest, is the
cost to the assured.   This is the most satisfactory proof of value,
in case the goods were purchased near the time when,and at or near
the place at which the risk commences.   Therefore we do not look
upon invoices of goods, purchased in France some eight or ten
months previous to the commencement of the risk, as the true cri-
teria of value here; but when they are produced, and it appears
that there is a difference of nearly three hundred per cent, it cer-
tainly requires explanation, and strong evidence of there being so
great a difference in the state of the markets in the two countries.

We are not disposed to go to the extent contended for by the de-
fendants' counsel, that if the plaintiff fail to sustain his affidavit by
direct evidence, to the amount claimed, he is to be considered as
having sworn falsely, and thereby hav'ng forfeited the policy.   In
open policies it would, in many, if not in a majority of cases, be
extremely difficult to prove the actual value of the goods lost.   It
is therefore sufficient to show by testimony the great probability of
the affidavit being true, and, in weighing this testimony, the charac-
ter of the assured is a circumstance to be considered, as well as the
credibility of the witnesses.   The character of an assured party is
not to be blasted, and his policy forfeited for which a premium has
been paid, simply because he cannot prove the value of every ar-
ticle lost.   But if an account is made out to be feigned or fraudu-
lent, there cannot be a doubt, but that the policy is forfeited; and
a wide difference between the cost and the valuation, is a strong
circumstance, and, if unexplained, should have its due weight upon
the jury.   This seems to have been the opinion of the court in the
case in the 20th English Common Law Reports, 158, so much re
lied on by the counsel for defendants, and we shall pursue the same

course that was adopted in that case, and grant a new trial, more particularly as both parties complain of the verdict.

The judgment is therefore reversed, and the case remanded to the Parish Court for a new trial; with directions to the judge thereof, to proceed therein in conformity to the principles herein expressed, and according to law; the plaintiffs and appellee paying the costs of the appeal.

*Roselius,* for the plaintiff.

*Grymes,* for the appellants.